RAYMOND LEASING CORPORATION *vs*. CALLICO DISTRIBUTORS, INC.

No. 03-P-1445.

Bristol. June 11, 2004. - January 11, 2005.

Present: PERRETTA, GREENBERG, & BECK, JJ.

*Contract,* Equipment lease, Lease of equipment, Damages. *Damages,* Breach of contract, Attorney's fees, Interest. *Practice, Civil,* Attorney's fees, Interest. *Interest. Taxation,* Sales and use tax.

In a civil action seeking damages for the defendant's failure to make rental payments under an equipment lease agreement, the judge correctly concluded that the proceeds that the plaintiff received from the sale of the equipment after the defendant had returned it constituted the unexpired rental value of the equipment, and deducted those proceeds from the remaining rental payments due under the lease to reach the amount due to the plaintiff as damages [749-751]; moreover, the judge committed no error in calculating the award of attorney's fees [751-752] or in basing his computation of interest on the damages award on the entire amount of the monthly payments due under the lease [752-754], but the judge should have factored in sales or use tax [754].

CIVIL ACTION commenced in the Superior Court Department on March 20, 2001.

The case was heard by *David A. McLaughlin,* J., on a motion for summary judgment; a proceeding regarding damages and attorney's fees was heard by *Robert J. Kane,* J., and a motion for reconsideration was considered by him.

*Kurt B. Gerstner* for the plaintiff.

*Theodore H. Goguen, Jr.,* for the defendant.

PERRETTA, J. When Callico Distributors, Inc. (Callico), stopped making monthly rental payments two years into its five-year equipment lease (lease) with Raymond Leasing Corporation

(Raymond),[1] Raymond brought this action seeking damages under the lease agreement. A Superior Court judge allowed Raymond's motion for summary judgment on the issue of Callico's default, but denied the motion with respect to the question of damages. Damages were determined at a bench trial before a second judge. The parties have cross-appealed, and we affirm the judgment, as modified to include provision for the applicable sales tax. We also affirm the order denying the motion for reconsideration.

1. *Background.* Those portions of the five-year lease relevant to the parties' dispute required Callico to make sixty monthly payments in the amount of $1,836.83 each, plus any applicable use or sales tax. At the expiration of the lease, Callico was either to return the leased equipment to Raymond or purchase the equipment for its fair market value. About two years into the lease, Callico claimed the equipment was not performing as required and stopped making monthly payments. When Raymond brought this action a year later, pursuant to paragraph 13(C) of the lease, Callico returned the equipment peaceably and without court intervention. Raymond then recovered $28,000 from the sale of most of the returned equipment to third parties.

2. *The judgment.* Raymond brought this action against Callico pursuant to paragraph 13(C) of the lease, captioned "Default and Remedies." That paragraph reads, in pertinent part:

> "[Raymond], in addition to being entitled to take possession of the Equipment . . . also shall be entitled to recover immediately as and for damages for the breach of this Lease and not as a penalty, an amount equal to the difference between the aggregate rent reserved hereunder for the unexpired term of the Lease (hereinafter called 'Remaining Rentals') and the then aggregate rental value of all Equipment for the unexpired term of the Lease (hereinafter called 'Unexpired Rental Value of Equipment') . . . . [Raymond], upon any breach of this Lease may sell the

---

[1]The original lease was between Callico and BT Finance, Inc. All of BT Finance, Inc.'s, rights under the lease were subsequently assigned to Raymond, and Raymond was substituted as the plaintiff in this action.

Equipment or may release such Equipment for a term and a rental . . . and any proceeds of such sale received . . . or any rental payments received under a new Lease . . . shall be deemed and considered for the purposes of this paragraph as being the Unexpired Rental Value of Equipment."

After Callico's liability on the lease was settled by summary judgment, a different judge took up the question of the damages due Raymond. The dispute between the parties at trial on that issue was whether the full value of the rental equipment was to be subtracted from Callico's debt. The judge determined that under a reasonable reading of paragraph 13(C), Raymond was entitled to recover "the difference between the aggregate rent reserved for the unexpired term of the lease . . . and the then aggregate rental value of all equipment for the unexpired term of the lease . . . ," plus repossession charges, attorney's fees, and statutory interest.[2]

3. *Raymond's appeal.*[3] a. *Calculation of damages.* Raymond argues that the judge erred in failing to include $24,734.40 in

[2]More specifically, the judge multiplied the lease term by the monthly rental, which totaled $110,209.80, and then subtracted the rental payments made by Callico ($46,839.17), leaving a balance of $63,370.63 in future rent due, from which he subtracted the amount ($28,000) recovered by Raymond from the sale of the returned equipment. To the balance of $35,370.73, the judge added repossession costs ($1,288.81) for a total award of $36,659.54. Attorney's fees ($18,495) and statutory interest were added to the damages award.

Although there may be some discrepancies between the figures set out in the judge's memorandum of decision and the evidence presented at trial, the parties make no argument on that basis. We, therefore, accept the figures set out by the judge.

[3]Raymond argues that paragraph 17 of the lease provides that it is to be construed under the laws of New York. See *Reiss* v. *Financial Performance Corp.*, 97 N.Y.2d 195, 198 (2001), quoting from *W.W.W. Assocs.* v. *Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms"). This basic principle of contract law is, in turn, based on the sound theory that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield* v. *Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002), quoting from *Slamow* v. *Del Col*, 79 N.Y.2d 1016, 1018 (1992). As stated by the court in *Greenfield*, *supra* at 569-570, "if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." Any doubtful language in a writing is to be construed against the

the damages award, which Raymond claims represents the "residual value" of the equipment as of the time of the expiration of the five-year lease. Raymond maintains that in order to be made whole under the terms of the lease, it is entitled to $60,105.03 in damages. It computes its damages as the amount of the remaining rentals due under the lease ($63,370.63), plus the fair market value of the equipment returned by Callico as determined at the expiration of the five-year lease ($24,734.40), for a total of $88,105.03, from which Raymond then subtracts the proceeds received from its sale of the returned equipment ($28,000). The net result is $60,105.03.

We begin our analysis by noting that the term "residual value" appears nowhere in the lease. Rather, the only time that the term is used is by the trial judge in reference to the amount ($28,000) recovered by Raymond from the sale of the returned equipment. Nor is there anything in paragraph 13(C) of the lease that expressly or impliedly provides that Raymond, upon Callico's default, is entitled to the equipment *and* the dollar amount of its "residual value." Indeed, Raymond essentially conceded as much at trial on the question of damages.

Raymond's argument on this point is based on "Schedule A" to the lease and on an assumption that the terms "residual value" and "fair market value" are synonymous. Schedule A provides Callico with an option to buy the equipment at the expiration of the lease at its fair market value at that time. As with paragraph 13(C), the term "residual value" does not appear in Schedule A. Moreover, even were we to substitute [resid]ual value" for "fair market value" in our reading of [Schedu]le A, our conclusion would be no different. There is [nothing] in Schedule A that either expressly or impliedly creates [an obl]igation on the part of Callico to render to Raymond two [years] into the lease term either the "residual value" or "fair [market] value" of the returned equipment determined as of the [expirat]ion date of the five-year lease. Nor has Raymond given us [any] rationale for taking an amount intended to be used at the

dra[ ] i.e., Raymond in the instant case. See *Jacobson v. Sassower*, 66 N.Y.[ ] 991, 993 (1985). Because Callico makes no argument to the contrary, we [app]ly this substantially similar law of our sister State to the parties' disp[ute] concerning the meaning of those portions of the lease pertinent to the cros[s-a]ppeals before us.

expiration of the lease, for purposes of determining the fair market value of equipment to be purchased under the option provided in Schedule A, and reading that amount into paragraph 13(C) of the lease, which expressly provides for remedies upon default.

We agree with the trial judge's conclusion that because Callico defaulted on the five-year lease within two years and returned the equipment to Raymond, which then sold it for $28,000, Callico is obligated under paragraph 13(C) of the lease to pay Raymond damages in an amount representing the remaining payments due under the lease, i.e., the "Remaining Rentals," and to return the leased equipment to Raymond. Raymond was then free either to re-lease or sell the returned equipment. Because Raymond chose to sell the equipment returned to it by Callico, the proceeds from the sale ($28,000) were to be considered as the "Unexpired Rental Value of Equipment." As correctly calculated by the judge pursuant to paragraph 13(C), Raymond was entitled to recover damages in the amount of $35,370.73. See note 2, *supra*.

b. *Attorney's fees.* Paragraph 13(C) of the lease concludes with the following provision:

> "[Raymond] may recover a reasonable sum of attorney's fees and such expenses as shall be expended or incurred in the seizure of items of Equipment, in the collection of any amount due hereunder, in the enforcement of any other right or privilege hereunder or in any consultation or action in connection with any of the foregoing."

The trial judge applied the well-established criteria set out in *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933), to Raymond's request for attorney's fees under the lease. The judge drastically reduced the reported number of hours expended to a number he determined to be reasonable,[4] against which he applied the hourly rate customarily charged by attorneys with experience and expertise in this particular area of the law. Raymond does not dispute the reduction in the attorney's fees awarded in connection with the trial, but maintains

---

[4]The judge subtracted thirty-five hours of time from the billing detail submitted by Raymond.

on appeal that the judge erred in failing to award attorney's fees incurred in connection with its opposition to Callico's postjudgment motion for reconsideration.[5] In view of the action the judge took with respect to the award of attorney's fees at the conclusion of the trial, we see no error in his not awarding additional fees in connection with the motion for reconsideration.

4. *Callico's appeal.* In its appeal from the judgment, Callico argues that the damages award includes an excessive amount of attorney's fees, as well as statutory interest computed on unearned interest, which it claims violates G. L. c. 231, § 6C.

a. *Attorney's fees.* As discussed above, in setting the amount of attorney's fees awarded to Raymond, the judge applied the well-established criteria set out in *Cummings* v. *National Shawmut Bank*, 284 Mass. at 569. Callico's argument that the fees are excessive is no more than a quarrel with the amount of the judge's reduction in determining the award of attorney's fees. We see no error.

b. *Interest on the award.* As earlier noted, statutory interest was added to the damages award which was comprised, in part, of the amount of the monthly rental due over the five-year term of the lease, less the amount of monthly payments made by Callico, that is, $35,370.73. See note 2, *supra.* Callico argues that because each monthly rental payment included an interest component, and because it returned the equipment to Raymond after two years, Raymond was not entitled to statutory interest on the unearned interest component of the damages award. Callico alleges that Raymond concedes that this unearned interest component amounts to $9,142.27.[6]

We see nothing in paragraph 13(C) of the lease to support

---

[5]Callico maintains on appeal that Raymond made no formal request for attorney's fees, but the record demonstrates otherwise. In its opposition to Callico's motion for reconsideration, Raymond argued, inter alia, that it "should be awarded additional fees and expenses for having to respond to this motion."

[6]According to Callico, the amount of damages upon which statutory interest should have been computed is $27,838.71. This amount is derived from the monthly rental multiplied by the lease term ($110,209.80), less the amount of rental payments made by Callico ($46,839.17), less the amounts received by Raymond from the sale of the equipment returned by Callico ($28,000), less the amount of what Callico claims is unearned interest ($9,142.27), which yields a result of $26,228.46. To that amount, Callico would add Raymond's costs of repossession ($1,288.81) plus sales tax ($321.44). It is upon that

Callico's argument. The plain language of that paragraph provides that upon a breach of the lease by Callico, Raymond shall be entitled to the "aggregate rent" remaining for the unexpired term of the lease. There is nothing in any part of the lease that sets out and distinguishes between a principal and an interest component of each monthly payment. That fact, as well as the language of paragraph 13(C), supports our conclusion that the terms of the lease do not require the apportionment and credit that Callico seeks.[7]

Nor do we think that Callico is entitled to a credit by reason of G. L. c. 231, § 6C, as amended through St. 1982, c. 183, § 3. That statute provides in part as follows:

> "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to *the amount of damages*, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action . . . ." (Emphasis added.)

As the court stated in *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 841 (1986), quoting from *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 835 (1981), "[a]n award of interest is made 'so that a person wrongfully deprived of the use of money should be made whole for his loss.' "

Both the lease and G. L. c. 231, § 6C, entitle Raymond to interest on the amount that it would have received but for Callico's breach, that is, the aggregate amount of $35,370.73. See note 2, *supra*. Because Raymond lost the use of the entire amount of each monthly rental payment, we see no error in the

---

consequent amount, $27,838.71, that Callico claims statutory interest should be computed. Compare note 2, *supra*.

[7]That Raymond at one time may have offered to credit Callico with the amount now claimed to be unearned interest ($9,142.27) is immaterial to the question what is required under the lease.

judge's computation of damages, which was based on the entire amount of the monthly payments due under the lease.

5. *The sales or use tax.* It appears that both Raymond and Callico agree that paragraph 4 of the lease requires that Callico pay Raymond any applicable "sales or use tax." As of the time Callico ceased its monthly payments to Raymond, the amount of sales tax due from Callico was $321.44. As best we can determine, the judge did not factor this amount owed by Callico into the damages awarded to Raymond.

6. *Conclusion.* The judgment awarding Raymond damages in the amount of $36,659.54 is to be modified so as to include the amount of the sales tax ($321.44) owed by Callico, for total damages in the amount of $36,980.98. As so modified, the judgment is affirmed. The order denying the motion for reconsideration is also affirmed.

Raymond has requested an award of reasonable attorney's fees incurred in connection with this appeal pursuant to paragraph 13(C) of the lease. Raymond shall submit a petition for fees and costs, with the necessary documentation, as described in *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989), within fifteen days of rescript. Callico will be given fifteen days to respond. Callico's request for attorney's fees on appeal is denied.

*So ordered.*