# United States Court of Appeals
## For the First Circuit

Nos. 11-1438, 11-1857

IN RE: VOLKSWAGEN AND AUDI WARRANTY
EXTENSION LITIGATION

--------------------------------------------------------------

VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN AG; AUDI AG,

Defendants, Appellants,

v.

PETER J. MCNULTY LAW FIRM; IRWIN & BOESEN, P.C.;
BERGER & MONTAGUE,

Interested Parties, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Boudin, Circuit Judges.

Kenneth S. Geller, with whom Michael B. Kimberly, Mayer Brown LLP, Michael Hoenig, Jeffrey L. Chase, Daniel V. Gsovski, Miriam Skolnik, Michael B. Gallub, Herzfeld & Rubin, P.C., David A. Barry, and Sugarman, Rogers, Barshak & Cohen, PC were on brief, for appellants.
Michael B. Bogdanow, with whom Victoria M. Santoro and Meehan, Boyle, Black & Bogdanow, P.C. were on brief, for appellees.

July 27, 2012

**LYNCH, Chief Judge**.  This appeal is from the district court's award of $30 million in attorneys' fees to several groups of plaintiffs' attorneys who achieved a class action settlement agreement.  It presents the question of what source of law governs the award of such fees in a diversity suit, where the parties' settlement agreement contains, inter alia, a provision expressly stating that the parties have not agreed on the source of law to apply to the fee award.  We hold that under these circumstances, where there is an agreement that the defendants will pay reasonable fees, state law governs the award of fees.  We vacate the fee award, which was based on federal sources of law, and remand for a new determination of the proper reasonable fee award under the relevant state law.

I.

A.      The Lawsuit

This suit arises out of alleged engine defects in certain Volkswagen and Audi vehicles, which plaintiffs asserted were prone to the formation of damaging engine sludge unless particular types of motor oil were used.  Five putative statewide class actions were filed in five federal district courts, alleging, among other claims, consumer fraud and unfair and deceptive trade practices. In Re Volkswagen & Audi Warranty Extension Litig., 452 F. Supp. 2d 1354, 1355-56 (J.P.M.L. 2006).  On August 29, 2006, these suits were consolidated by the Judicial Panel on Multidistrict Litigation

and, as multidistrict litigation (MDL) cases, were transferred to the District of Massachusetts for pretrial proceedings.[1]  Id. at 1356.  The Massachusetts district court ordered the plaintiffs to file and serve a consolidated amended complaint.  In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. Feb. 7, 2007).

Plaintiffs filed their second amended consolidated complaint on October 15, 2007.  The factual allegations underlying the complaint were that the 1.8 liter turbo-charged engines contained in 1997 to 2004 model Audi vehicles and 1998 to 2004 model Volkswagen Passat vehicles were defectively designed, and that the defendants concealed this defect.  The plaintiffs sought to bring claims "on behalf of all persons or entities in the United States who are current or former owners and/or lessees" of those particular vehicles.  The complaint named as defendants Volkswagen of America, Inc., a New Jersey corporation, Volkswagen of America, Inc., d/b/a Audi of America, Inc., a New Jersey corporation, the domestic distributors of the vehicles, as well as Volkswagen AG and Audi AG, two German corporations.

The second amended complaint raised a number of legal theories of recovery, including that defendants had violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq.,

_____

[1] Two additional cases were later transferred and consolidated.

-4-

and other state consumer fraud statutes that are "the same or substantially similar to the New Jersey" law. The complaint also alleged breach of contract, breach of implied warranty of merchantability, unjust enrichment, and violation of certain California laws. The complaint stated that diversity subject matter jurisdiction was proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), (d)(6), and sought a declaratory judgment, injunctive relief, actual and treble damages, restitution, and an award of costs, including attorneys' fees.[2]

On October 23, 2008, a special master was appointed to "supervise all aspects of discovery," to "decide all nondispositive pretrial motions," to make recommendations as to all dispositive motions, and to assist the parties in any settlement efforts. In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. Oct. 23, 2008).

---

[2] On January 30, 2008, the defendants moved to dismiss the complaint under Rule 12(b)(6). Among other arguments, the defendants argued that application of New Jersey law to all claims in the case would violate relevant choice of law rules as well as the Constitution, and New Jersey law could only apply where the relevant sale or lease transaction took place in New Jersey. Plaintiffs' response to the choice of law argument was that it was premature and required discovery to determine what law ought to apply, and in any event New Jersey law could properly apply to all claims.

On June 9, 2008, the district court denied the motion to dismiss in a one-sentence order which stated that the motion was "denied without prejudice to be resubmitted as a Motion for Summary Judgment." In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. June 9, 2008) (emphasis omitted). Discovery began shortly thereafter.

At some point, serious settlement discussions between the parties began, and on December 14, 2009, the special master reported that the parties "seem[ed] very close to reaching an agreement." In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. Dec. 14, 2009). On May 12, 2010, the special master reported that the parties had begun drafting a proposed settlement agreement and associated documents. In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. May 12, 2010).

B.        The Settlement Agreement

On September 13, 2010, a proposed settlement agreement was submitted to the district court, along with a motion requesting conditional approval of the settlement and certification of a class for settlement purposes. The final settlement as approved by the court did not change the terms of the proposed settlement. So we discuss several material portions of the proposed settlement: the benefits obtained by the class, the appointment of a settlement administrator, the terms as to attorneys' fees, and the choice of law provision.

The settlement stated it was not "an admission by Defendants of any liability or wrongdoing whatsoever." The settlement class consisted of all current and former owners and lessees of model year 1997-2004 Audi A4 vehicles or model year 1998-2004 Volkswagen Passat vehicles equipped with 1.8 liter turbo

engines, comprising a total of 479,768 vehicles. The proposed settlement offered several benefits to the class, including (1) payment for engine repair or replacement costs, (2) a warranty extension for a subset of the vehicles, (3) a one-time $25 oil change discount for a subset of the vehicles, and (4) an education and information program designed to inform class members of the risks to their engines and means to prevent those risks. The proposed settlement did not place a monetary value on these benefits.

The proposed settlement created an "Oil Sludge Settlement Administrator" to oversee the claims process for class members. The administrator was to record every claim for reimbursement, to determine whether the claim was to be allowed or denied, and to explain the basis for any claim that was denied.

The proposed settlement contained a procedure for providing notice to all settlement class members of the certification and fairness hearing and the settlement agreement. Notice of the proposed settlement was to be prepared by defendants, reviewed and approved by class counsel, and disseminated by the settlement administrator.

The proposed settlement also "reserve[d] to the [district] [c]ourt exclusive and continuing jurisdiction over this action, the [p]arties, . . . and this Settlement Agreement for

purposes of administering, supervising, construing, and enforcing this Settlement Agreement."

Most relevant to this appeal, the proposed settlement contained a section regarding "Attorney Fees and Costs." It provided:

> 1. Class Counsel will submit an application to the Court for an award of reasonable attorneys' fees and expenses on or before a date to be set by the Court ("Fee Application"). Each Settling Party reserves all rights to appeal from a Class Counsel fees and expenses award if that Party files a timely and proper objection with the Court. The Class Counsel fees and expenses award and Final Judicial Approval shall be separate so that the appeal of one shall not constitute an appeal from the other.
>
> 2. Subject to Section VI.A.2 above, Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants and shall not diminish, invade, or reduce, or be derived from, benefits afforded to Settlement Class Members under this Settlement Agreement.
>
> 3. Any Class Counsel fees and expenses awarded shall be paid by Defendants to Class Counsel within thirty (30) days of the entry of a final judgment or order by the Court with respect to Class Counsel fees and expenses, except in the event of an appeal, . . . . All matters pertaining to an award of Class Counsel fees and expenses including, but not limited to, any dispute amongst class/plaintiffs' counsel as to their respective attorneys fees and expenses, have been referred to the [special master]. [The special master's] recommendation with respect

> to Class Counsel fees and expenses shall be
> made to the Court.[3]

Section VI.A.2 of the proposed agreement provided:

> It is expressly understood and confirmed that
> the parties have not agreed to any choice,
> selection or waiver of state or federal law to
> be applied to any aspect of the construction,
> preliminary or final approval, or application
> of any provision of this Agreement of
> Settlement, including but not limited to
> attorney fees and costs.

The attorneys' fees provision expressly states that it is "subject to" this section.

C.        Notice of the Proposed Settlement with Statement About Attorneys' Fees

On September 22, 2010, the special master issued a recommendation that the district court (1) conditionally approve a class for settlement purposes only and (2) conditionally approve the proposed settlement agreement, with a hearing on the final agreement to be held on March 11, 2011, after notice of the settlement was sent to class members. In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790, 2010 WL 3769259, at *1, *7 (D. Mass. Sept. 22, 2010).[4]  The district court adopted this

---

[3]  See Fed. R. Civ. P. 23(h)(4) ("The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).").

[4]  As to conditional approval of the class for settlement purposes, the special master found that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) were satisfied. In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790, 2010 WL 3769259, at *2-4 (D. Mass. Sept. 22, 2010).  The special master found that the proposed notice to the class satisfied the

-9-

recommendation in full.  In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790, 2010 WL 3810625 (D. Mass. Sept. 24, 2010).

On December 20, 2010, notice of the proposed settlement was mailed to 1,603,013 class members, see Fed. R. Civ. P. 23(e)(1), whose names and addresses were determined by use of Volkswagen and Audi Vehicle Identification Numbers on record in each state registry of motor vehicles throughout the United States. The proposed settlement agreement provided that the notice was to be drafted by the defendants and reviewed and approved by class counsel, and this procedure appears to have been followed.  The notice contained a section addressing the question "How will the lawyers be paid?"[5]  That section stated:

> Class Counsel will ask the Court for up to $37.5 Million for attorneys' fees and up to approximately $1.75 Million for reimbursement of costs and expenses incurred in the prosecution and settlement of these actions. The Defendants do not dispute Class Counsel's entitlement to an appropriate fee and reimbursement for cost and expenses, but may oppose the amounts requested by Class Counsel. The Defendants will pay whatever attorneys' fees and costs and expenses that the Court awards without reducing or limiting any of the

_____

requirements of Rule 23(c) and (e).  Id. at *5.  As to conditional approval of the settlement, the special master found that the settlement was entered into after extensive negotiation and was reasonable in light of the claims raised and the litigation risks. Id. at *1.

[5]  See Fed. R. Civ. P. 23(h)(1) (notice of motions requesting attorneys' fees for class counsel must be "directed to class members in a reasonable manner").

-10-

benefits available to Settlement Class Members.

D.        The Request for Attorneys' Fees

On December 20, 2010, class counsel submitted a request for $37.5 million in attorneys' fees, for all attorneys working for plaintiffs,[6] as well as costs not to exceed $1.75 million, under Federal Rule of Civil Procedure 23(h). Class counsel argued that federal law governed the award of fees. See Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). The argument was that the court should apply the percentage of fund methodology[7] for determining the size of an appropriate fee award, the settlement value was at least $414 million, and $37.5 million was a reasonable percentage

---

[6] The procedure established by the special master for awarding attorneys' fees provided that class counsel would file "[a] motion for all fees and all counsels' costs." In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790, 2010 WL 6334859, at *1 (D. Mass. Dec. 22, 2010). Class counsel would bear initial responsibility for distributing the award of attorneys' fees among all plaintiffs' counsel, based on their contribution to the litigation. Id. Only after such an initial distribution was made, and after all appeals as to the fee award itself were resolved, would the special master address any disputes by "non-Class Counsel" as to the distribution of attorneys' fees. Id. The district court's opinion awarding attorneys' fees approved this procedure. In re Volkswagen & Audi Warranty Extension Litig., 784 F. Supp. 2d 35, 47 (D. Mass. 2011).

[7] Under the percentage of fund method, "the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995).

-11-

of the value of the settlement.  An exhibit outlining the hours expended by class counsel on the suit was provided so that the court could perform a lodestar[8] cross check.  Based on the 23,191 hours that class counsel spent on the case,[9] they argued that a fee award of $37.5 million would be reasonable under the lodestar method.

The defendants did not argue that the court should award no attorneys' fees at all but strongly opposed the argument that federal law could apply, arguing that any fee award would only be proper under New Jersey's fee-shifting statute, not federal law. Defendants also opposed class counsel's fee calculation methodology.  They argued that the settlement value could not be determined until after June 27, 2011, when certain reimbursement claims would be due.  Defendants that said this was particularly necessary as their expert valued the settlement at only approximately $50 million, as opposed to the over $400 million valuation of plaintiffs' expert.

On February 18, 2011, the special master issued a report and recommendation which, after finding that federal law governed the attorneys' fees award and that the New Jersey statute was

---

[8]  Under the lodestar method, the court determines the fee award by "ascertain[ing] the number of hours productively expended and multiply[ing] that time by reasonable hourly rates." Spooner v. EEN, Inc., 644 F.3d 62, 68 (1st Cir. 2011).

[9]  While the fee request covered all attorneys working for plaintiffs, not just class counsel, the hours submitted for the lodestar calculation were those of class counsel only.

-12-

irrelevant, recommended an award of $30 million in attorneys' fees and approximately $1.2 million in costs.  In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790, 2011 WL 721970, at *2-3, *11 (D. Mass. Feb. 18, 2011).  On March 4, 2011, the defendants duly filed objections to the recommended fee award and preserved all of the arguments they make on appeal.

The district court held a hearing on both the proposed settlement agreement and the attorneys' fees award on March 11, 2011, see Fed. R. Civ. P. 23(e)(2), (h)(3), where defendants again argued that state law must govern the fee award.

On March 24, 2011, the district court issued two opinions.  In the first opinion, the district court approved the proposed settlement.[10]  In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349 (D. Mass. 2011).  No appeal has been taken from the approval of the settlement.

In the second opinion, the district court adopted, virtually verbatim, the special master's recommendation that the court award $30 million in attorneys' fees and approximately $1.2

---

[10] The district court found that the certification requirements of Rule 23(a) and 23(b) were met, and that the settlement was fair, reasonable, and adequate.  In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349, 354 (D. Mass. 2011).  The district court entered judgment approving the settlement and stating that "each and every term and provision of the Agreement for Settlement shall be deemed incorporated into this Final Approval Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court." Id. at 356.

million in costs and expenses.  In re Volkswagen & Audi Warranty Extension Litig., 784 F. Supp. 2d 35 (D. Mass. 2011).

The district court applied federal law to determine the amount of fees to award, for two reasons.  First, the district court found that "where, as here, a fee award is a result of the parties' private agreement, federal law governs the decision."  Id. at 40.  Second, the court explained that a fee award pursuant to the state fee-shifting statutes would not be appropriate because plaintiffs would not be "prevailing parties" within the meaning of those statutes.  Id. at 41.  The district court also noted that "[i]n the context of a class action settlement in the First Circuit, however, fees may be awarded, as part of the court's equitable powers over such settlement agreements, from a fund created to benefit the class."  Id. at 39.

The district court then applied the percentage of fund method, finding that a $30 million award would be a reasonable percentage of the value of the settlement, against the parties' experts' estimation at somewhere between $50 million (defendants' expert) and $223 million (class counsel's expert's revised estimate).  Id. at 43-44, 47.  The court did not determine the value of the settlement.

The district court also said it applied a lodestar cross check, taking the 23,191 hours spent by class counsel, reducing those hours by one-third for unnecessary hours, and multiplying the

remaining hours by $500 per hour to produce a base lodestar value of $7,734,000.[11] Id. at 46-47. The district court then "[a]ssum[ed] a multiplier of 2.50," which would result in a lodestar value of $19,335,000, which the district court said supported its determination that $30 million in fees was a reasonable percentage of the value of the settlement. Id. at 47.

Defendants appealed the award of fees. They also filed a motion to vacate, alter, or amend the fee award under Rules 52(b), 59(e), and 60(b), which again argued, among other points, that the district court should have applied New Jersey rather than federal law to determine the value of the fee award. The district court denied the motion, In re Volkswagen & Audi Warranty Extension Litig., No. 07-1790 (D. Mass. July 11, 2011), and the defendants separately appealed that order.

II.

"We review a district court's determination regarding attorney's fees for abuse of discretion." Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 108 (1st Cir. 2011). That said, "mistakes of law . . . always constitute abuses of a court's discretion," and in addition, "we will set aside a fee [determination] . . . if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an

---

[11] The district court's math was slightly incorrect; a one-third reduction in hours should have resulted in 15,461 hours, not 15,468 hours; the resulting dollar figure would be $7,730,500.

-15-

improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Id. (alteration in original) (quoting Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292-93 (1st Cir. 2001)) (internal quotation marks omitted).  "The issue of whether a district court may use a given methodology in structuring an award of attorneys' fees is one of law, and, thus, is subject to de novo review."  In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 304 (1st Cir. 1995).

Defendants raise two primary arguments in challenging the attorneys' fees award.[12]  First, defendants claim that the district court erred in applying general federal-law principles, rather than state law, to determine the amount of attorneys' fees to which class counsel were entitled.  Second, defendants claim that even if federal law applied, the district court made a number of errors of law and fact in its determination of the fee award.

Because the court erred as a matter of law in applying federal-law principles instead of the relevant state's law, we do not reach the defendants' other claim of error.  We vacate the fee award and remand for application of Massachusetts law principles, as described below.

A.    The Settlement Agreement and Choice of Law

---

[12]  Defendants do not challenge the award of approximately $1.2 million in costs, so we do not address that award.

We typically review the district court's interpretation of a settlement agreement de novo, and do so here. See Ricci v. Patrick, 544 F.3d 8, 17 (1st Cir. 2008); F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 449 F.3d 185, 192 (1st Cir. 2006). We also review choice of law issues de novo. See Robidoux v. Muholland, 642 F.3d 20, 22 (1st Cir. 2011) ("Choice of law determinations are questions of law, which we also review de novo."); see also Torre v. Brickey, 278 F.3d 917, 919 (9th Cir. 2002) (per curiam) ("Whether state or federal law applies to a particular issue in a diversity action is a question of law which we also review de novo.").

### 1. The Settlement Agreement

It is axiomatic that, under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2157 (2010); see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975) (discussing exceptions to the American Rule).

Here, the defendants agreed to pay reasonable attorneys' fees as part of the settlement agreement. The agreement first provides that "Class Counsel will submit an application to the Court for an award of reasonable attorneys' fees and expenses." The agreement goes on to provide that "Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants and

shall not diminish, invade, or reduce, or be derived from, benefits afforded to Settlement Class Members under this Settlement Agreement." The agreement further states that "[a]ny Class Counsel fees and expenses awarded shall be paid by Defendants to Class Counsel within thirty (30) days of the entry of a final judgment or order by the Court with respect to Class Counsel fees and expenses."

This language makes clear that the defendants agreed to pay "reasonable attorneys' fees and expenses;" further, the notice sent to the class made clear that "[t]he Defendants do not dispute Class Counsel's entitlement to an appropriate fee and reimbursement for cost and expenses."

However, the settlement agreement expressly disclaims any agreement between the parties as to what choice of law governs the award of attorneys' fees:

> It is expressly understood and confirmed that the parties have not agreed to any choice, selection or waiver of state or federal law to be applied to any aspect of the construction, preliminary or final approval, or application of any provision of this Agreement of Settlement, including but not limited to attorney fees and costs.

The fee award here is based on the agreement and not on any statute, federal or state. The question then is what source of law governs the fee award. The district court incorrectly concluded that federal law governed.

-18-

To determine the source of law that governs the settlement agreement in this diversity case, we engage in a two-part inquiry.  First, we evaluate whether under the Erie doctrine, see Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), federal or state law governs the matter.  This assessment is made first because "[a]lthough state law generally supplies the rules of decision in federal diversity cases, it does not control the resolution of issues governed by federal statute."  Budinich v. Becton Dickinson & Co., 486 U.S. 196, 198 (1988) (citations omitted); see also U.S. Const. art. VI, cl. 2 (Supremacy Clause); Sun Oil Co. v. Wortman, 486 U.S. 717, 727 (1988) ("It is never the case under Erie that either federal or state law -- if the two differ -- can properly be applied to a particular issue . . . ."); Erie, 304 U.S. at 78 ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

Second, if state law governs, and a choice of law must be made, we determine which state's law applies by applying the choice of law rules of the forum state (subject to the complexities of MDL litigation).  See Servicios Comerciales Andinos, S.A. v. Gen. Elec. del Caribe, Inc., 145 F.3d 463, 479 (1st Cir. 1998) (a federal court sitting in diversity first "determines whether a particular matter is procedural or substantive for Erie purposes;" only if the matter is procedural does federal law apply; "if substantive, the

court follows the law of the forum state;" and "if a choice of law must be made," the federal court "applies the law that would be applied under the conflict of laws rules of the forum state").

> 2.   Federal Law Does Not Govern the Award of Reasonable Attorneys' Fees

State law, rather than federal law, governs the determination of the award of attorneys' fees in this case.

As a general matter, "interpreting [settlement] agreements and their scope is a matter of state contract law." Fábrica de Muebles J.J. Álvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 26, 33 (1st Cir. 2012); see also, e.g., Fanning v. Potter, 614 F.3d 845, 848 n.2 (8th Cir. 2010) (same); In Re: Chira, 567 F.3d 1307, 1311 (11th Cir. 2009) (same); Howmedica Osteonics Corp. v. Wright Med. Tech., Inc., 540 F.3d 1337, 1347 (Fed. Cir. 2008) (same).[13]

We also start with the basic premise that the issue of attorneys' fees has long been considered for Erie purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir. 2010) ("Where, as here, the

_____

[13] Because this is a diversity suit, and the settlement agreement involved only state-law claims, we have no occasion to address the question of when federal-law principles govern the construction of settlement agreements disposing of federal claims. Cf. Michaud v. Michaud, 932 F.2d 77, 80 n.3 (1st Cir. 1991) (applying "federal law to the issue of an attorney's authority to settle a civil action brought under federal law").

court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law . . . ."); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 273 (1st Cir. 1990) (same); N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir. 1988) (same); see also, e.g., Northon v. Rule, 637 F.3d 937, 938 (9th Cir. 2011) (per curiam) (same); Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1280 (10th Cir. 2011) (same); Chin v. Chrysler LLC, 538 F.3d 272, 279 (3d Cir. 2008) (same).

Class counsel defend the choice of federal-law principles on two grounds: first, that Rule 23(h)(3), Fed. R. Civ. P., provides a basis for federal law governing the award of attorneys' fees; and second, in a qualitatively different argument, that federal courts' inherent equitable powers provide a basis for applying federal-law principles to the award of attorneys' fees. We reject each argument and hold that state law applies to interpretation of the settlement agreement.

### a.   Rule 23(h), Fed. R. Civ. P.

Apparently attempting to argue in this case that the award is "procedural" under Erie, class counsel point to Rule 23(h). We reject the argument that Rule 23(h) provides a basis for applying federal-law principles to the award of attorneys' fees here. Rule 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are

authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Advisory Committee's notes make plain that "[t]his subdivision does not undertake to create new grounds for an award of attorney fees or nontaxable costs. Instead, it applies when such awards are authorized by law or by agreement of the parties." Fed. R. Civ. P. 23 advisory committee's notes on the 2003 amendment. The text does not say such awards have to be governed by federal fee award principles.

Rule 23(h) does not provide a free-floating grant of authority to apply federal law to award attorneys' fees in class actions; rather it allows the federal court to make fee awards where they "are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); see also 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1803, at 325 (3d ed. 2005) (noting that "the power of the court to award attorney fees in a class action does not derive from the rule itself"). The first portion is of no help to class counsel; other than certain equitable doctrines, discussed below, they do not claim any federal law authorizes an award of fees here. The portion of Rule 23(h) authorizing fee awards pursuant to the parties' agreement does not here provide a federal-law basis governing the award. The settlement agreement itself has no agreement that federal law applies.

It is clear that Rule 23(h) does not "undertake to create new grounds for an award of attorney fees or nontaxable costs."

Fed. R. Civ. P. 23 advisory committee's notes on the 2003 amendment. As a result, Rule 23(h) is not "'sufficently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law."[14] Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 4-5 (1987) (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 & n.9 (1980)). Because there is no conflict between Rule 23(h) and application of state-law principles to determine the award, class counsel's reliance on Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 130 S. Ct. 1431 (2010), is inapposite.

### b. No Inherent Federal Equitable Powers

The district court erred in finding that it had inherent federal equitable powers to fashion an attorneys' fee award.

This based on inherent equitable powers argument is not an argument, like the Rule 23 argument, that the determination of the award is a matter of procedural law. Further, the argument is based on a series of cases which rest on federal question jurisdiction, not diversity jurisdiction. See Boeing Co. v. Van Gemert, 444 U.S. 472 (1980); Alyeska, 421 U.S. 240; Hall v. Cole,

---

[14] As made clear in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the "direct collision" language does not "mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand" but rather "expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute." Id. at 26 n.4.

-23-

412 U.S. 1 (1973); Mills v. Elec. Auto-Lite Co., 396 U.S. 375 (1970).

The basis for the award here is the agreement itself, a contract under state law, and not federal law. The fact that attorneys' fees are provided for by the settlement agreement is one of several reasons why there is no basis to resort to these federal equitable doctrines. Cf. United States ex rel. Bogart v. King Pharm., 493 F.3d 323, 331 (3d Cir. 2007) (where plaintiffs' attorneys are awarded fees under statutory fee-shifting regime, there is no need to resort to the common fund doctrine because "there is no iniquity to redress" given that the defendants paid attorneys' fees).

Beyond that, this is not a common fund or a common benefit case, and so equitable powers to award attorneys' fees are unavailable under those theories. The common fund method should apply only where attorneys seek compensation from a discernable pot of money won by the plaintiffs. See In re Thirteen Appeals, 56 F.3d at 305; see also Boeing, 444 U.S. at 478-79 (explaining that the common fund doctrine may apply where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," and noting that the doctrine rests on the court's "[j]urisdiction over the fund involved in the litigation" (emphasis added)). Here, there is no discernable pot.

In any event, the reasonable fees class counsel will receive come not out of the settlement proceeds but are in addition to the settlement proceeds,[15] rendering the common fund method inapplicable. See Boeing, 444 U.S. at 479 (for the common fund doctrine to apply, there must be "reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting" from the litigation (alteration in original) (quoting Alyeska, 421 U.S. at 264 n.39) (internal quotation mark omitted)).

By the same token, the common benefit method is unavailable here because this is not a case in which the cost of the fees is being "spread around" among the parties benefitted; the fees are on top of the class-wide benefits. See Alyeska, 421 U.S. at 264 n.39 (noting that "[i]n this Court's common-fund and common-benefit decisions . . . there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting"); Mills, 396 U.S. at 393-94 (stating that the substantial benefit doctrine applies where "the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among" the class members); see also Savoie v. Merchants Bank, 84 F.3d 52,

_____

[15] The settlement agreement provides that "Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants and shall not diminish, invade, or reduce, or be derived from, benefits afforded to Settlement Class Members under this Settlement Agreement."

56 (2d Cir. 1996) ("The common fund doctrine does not apply, however, when fees are sought from the assets of the losing party, and the fee award would not come from a common fund nor be assessed against persons who have derived benefit from the lawsuit.").

### 3. Horizontal Choice of State Law

Having concluded that state law governs, we turn to the question of which state's choice of law principles law applies to determine which state's attorneys' fees law applies.

In a diversity case, "[u]nder Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243 n.8 (1981); see also Auto Eur., LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003) ("A federal court sitting in diversity jurisdiction must employ the choice-of-law principles of the forum state . . . .").

Special rules apply in MDL cases as to determining the forum state. Here, the litigation in Massachusetts was consolidated from suits filed in federal district courts in multiple states and transferred to the District of Massachusetts under 28 U.S.C. § 1407. In Re Volkswagen, 452 F. Supp. 2d at 1356. Where a suit is consolidated and transferred under § 1407, courts

typically apply the choice of law rules of each of the transferor courts.[16] See Chang v. Baxter Healthcare Corp., 599 F.3d 728, 732 (7th Cir. 2010) ("When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred . . . ."); In re Air Disaster at Ramstein Air Base, Ger. v. Lockheed Corp., 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1496 (D.C. Cir. 1991) (Mikva, J., dissenting) ("When a case is transferred pursuant to 28 U.S.C. § 1407(a) by the Panel on Multi-District Litigation, the transferee court must apply the choice of law rules of the states where the transferor courts sit."); Phelps v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi. (In re Nucorp Energy Sec. Litig.), 772 F.2d 1486, 1492 (9th Cir. 1985) ("In this case, however, we must apply the choice of law rules of

_____

[16]  We assume that this rule applies here without deciding the question.  Given that all of the transferor jurisdictions' choice of law rules would result in application of Massachusetts law, we need not decide the matter here, because there is no conflict between the results of the various transferor jurisdictions' choice of law rules.  See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

Illinois because the claims were originally filed in district court in Illinois before they were transferred to California by the Judicial Panel on Multidistrict Litigation."); see also 19 Wright, Miller, & Cooper, Federal Practice & Procedure § 4506, at 114-15 (2d ed. 1996) ("In actions transferred under Section 1407 for consolidated pretrial discovery, . . . the transferee court should apply the substantive law of the transferor state, including its choice-of-law rules.").

This approach is consistent with the Supreme Court's holding that "where a case is transferred pursuant to 28 U.S.C. § 1404(a), [a court] must apply the choice-of-law rules of the State from which the case was transferred." Piper Aircraft Co., 454 U.S. at 243 n.8; see also Ferens v. John Deere Co., 494 U.S. 516, 519 (1990) (holding that the choice of law rules of the transferor court apply regardless of whether the defendant or the plaintiff moves for the transfer under 28 U.S.C. § 1404(a)).

Here, a total of seven cases were ultimately transferred to and consolidated in the district of Massachusetts, from the following jurisdictions: California, Florida, Illinois,[17] New Jersey, Ohio, and Pennsylvania. One additional case was filed directly with the district court, in Massachusetts.

Most of the states in which the suits originated (the exceptions are Florida and California) follow the "most significant

---

[17] Two separate cases were transferred from Illinois.

relationship" test for determining the source of law that applies to contracts that do not contain choice of law provisions, based on Section 188 of the Restatement (Second) of Conflict of Laws. <u>See</u> <u>Safeco Ins. Co.</u> v. <u>Jelen</u>, 886 N.E.2d 555, 558 (Ill. App. Ct. 2008) ("If the claim raised is a contract, the most significant contacts test is used.") (citing § 188);[18] <u>Nile</u> v. <u>Nile</u>, 734 N.E.2d 1153, 1161 (Mass. 2000) ("The settlement agreement did not express a choice of law so we look to factors such as those enumerated in Restatement (Second) of Conflicts of Laws § 188(2).");[19] <u>Pfizer, Inc.</u> v. <u>Emp'rs Ins. of Wausau</u>, 712 A.2d 634, 637 (N.J. 1998) (noting that "section 188 sets forth the general rule governing choice of law in contract actions");[20] <u>Ohayon</u> v. <u>Safeco Ins. Co. of Ill.</u>, 747 N.E.2d 206, 209 (Ohio 2001) (noting that Ohio has "expressly adopted Section 188");[21] <u>Guy</u> v. <u>Liederbach</u>, 459 A.2d 744, 748 n.5 (Pa. 1983) (noting that Pennsylvania "follow[s] a flexible

---

[18] <u>See</u> <u>also</u> <u>Eclipse Mfg. Co.</u> v. <u>U.S. Compliance Co.</u>, 886 N.E.2d 349, 357-58 (Ill. App. Ct. 2007) (applying § 188 to contractual choice of law determination); <u>Emp'rs Ins. of Wausau</u> v. <u>Ehlco Liquidating Trust</u>, 723 N.E.2d 687, 694 (Ill. App. Ct. 1999) (same).

[19] <u>See also</u> <u>Bushkin Assocs., Inc.</u> v. <u>Raytheon Co.</u>, 473 N.E.2d 662, 669 (Mass. 1985) (applying § 188 to contractual choice of law determination); <u>Clarendon Nat'l Ins. Co.</u> v. <u>Arbella Mut. Ins. Co.</u>, 803 N.E.2d 750, 753 (Mass. App. Ct. 2004) (same).

[20] <u>See also</u> <u>Gilbert Spruance Co.</u> v. <u>Pa. Manufacturers' Ass'n Ins. Co.</u>, 629 A.2d 885, 888 (N.J. 1993) (applying § 188 to contractual choice of law determination).

[21] <u>See also</u> <u>Gries Sports Enters., Inc.</u> v. <u>Modell</u>, 473 N.E.2d 807, 810 (Ohio 1984) (applying § 188 to contractual choice of law determination).

conflicts methodology combining interest analysis and the Restatement (Second) of Conflicts," and citing § 188).[22]

Under this approach, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971). The Restatement enumerates several factors to consider in making this determination:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Id. § 188(2). The Restatement notes that the contacts are to be assessed in the context of the principles of § 6 of the Restatement. Id. § 188(1). The Restatement further provides that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. § 188(2). The Restatement also explains that "[i]f the place of negotiating

---

[22] See also Gillan v. Gillan, 345 A.2d 742, 744 (Pa. Super. Ct. 1975) (applying § 188 to contractual choice of law determination).

the contract and the place of performance are in the same state, the local law of this state will usually be applied." Id. § 188(3).

Under the Restatement's approach, it is clear that Massachusetts law would be applied in this case. The settlement agreement was drafted to settle litigation that was ongoing in the District of Massachusetts. Many of the settlement negotiations took place in Boston, at settlement conferences with the special master. The agreement was entered into "subject to Final Judicial Approval," and so required approval by the district court in Massachusetts. The agreement provided that the district court retained "exclusive and continuing jurisdiction over this action, the Parties, . . . and this Settlement Agreement for purposes of administering, supervising, construing, and enforcing this Settlement Agreement." The district court approved the settlement agreement, which was incorporated into the judgment and possessed "the full force and effect of an Order of the Court." In re Volkswagen, 273 F.R.D. at 356.

The substance of the litigation also has significant contacts with Massachusetts. One of the suits was filed directly in the District of Massachusetts. One of the class representatives resides in Massachusetts. Moreover, the Judicial Panel on Multidistrict Litigation found that transfer of the suits to the District of Massachusetts would "serve the convenience of the

-31-

parties and witnesses and promote the just and efficient conduct of the litigation."  In Re Volkswagen, 452 F. Supp. 2d at 1355.

As a result, the weight of the relevant factors indicates that Massachusetts has the most substantial relationship to the issue of attorneys' fees under the settlement agreement, and so these five states would apply Massachusetts law.

Florida applies the "lex loci contractus" rule, which "provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla. 2006); see also Shaps v. Provident Life & Accident Ins. Co., 826 So.2d 250, 254 n.3 (Fla. 2002) ("This Court has held that under lex loci contractus, the law of the jurisdiction where the contract was executed governs substantive issues regarding the contract."). Under this rule, Massachusetts law would also apply: the settlement is properly viewed as having been executed in Massachusetts,[23] as that was the location where the settlement agreement was judicially approved, which was an express condition of the effectiveness of the settlement agreement.

Under the law of the last transferor jurisdiction, California, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does

_____

[23]   The settlement agreement states that it was "duly executed" on September 2, 2010, but does not state a location of execution.

-32-

not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646; see also Frontier Oil Corp. v. RLI Ins. Co., 63 Cal. Rptr. 3d 816, 821 (Cal. Ct. App. 2007) ("We conclude that notwithstanding the application of the governmental interest analysis to other choice-of-law issues, Civil Code section 1646 is the choice-of-law rule that determines the law governing the interpretation of a contract."). Given that the settlement agreement provided that the district court is to maintain jurisdiction over the settlement "for purposes of administering, supervising, construing, and enforcing this Settlement Agreement," the settlement agreement is properly construed as to be performed in Massachusetts. Even if it were decided that the state of performance is indeterminable, for the reasons given above it is properly viewed as having been "made" in Massachusetts. Either way, under California's choice of law rules, Massachusetts law would apply to the interpretation of the settlement agreement.

As a result, we conclude that all of the transferor jurisdictions would apply Massachusetts law to determine what constitutes "reasonable attorneys' fees and expenses" under the settlement agreement.[24] The district court's conclusion that state

---

[24] Because all of the transferor courts would apply Massachusetts law, we do not assess what would occur if fewer than all of the transferor jurisdictions would apply Massachusetts law. No party has briefed this issue and in this case the concern is hypothetical.

law did not govern was error.  We vacate the district court's award of fees and remand for resolution of the remaining issues under Massachusetts law.

B.        Application of Massachusetts Law

"Massachusetts generally follows the 'American Rule' and denies recovery of attorney's fees absent a contract or statute to the contrary."  Police Comm'r of Bos. v. Gows, 705 N.E.2d 1126, 1128 (Mass. 1999).  Under Massachusetts law, there appear to be two permissible approaches to determining attorneys' fees pursuant to a contractual agreement.

First, the lodestar approach is permissible in contractual fee cases.  See WHTR Real Estate Ltd. P'ship v. Venture Distrib., Inc., 825 N.E.2d 105, 111 (Mass. App. Ct. 2005); see also Raymond Leasing Corp. v. Callico Distribs., Inc., 820 N.E.2d 267, 271 (Mass. App. Ct. 2005) (affirming attorneys' fees award based on an adjusted "number of hours expended" multiplied by "the hourly rate customarily charged by attorneys with experience and expertise in this particular area of the law").  It has been used in some contractual fee cases.

Under Massachusetts's lodestar approach, attorneys' fees are "calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate."  Fontaine v. Ebtec Corp., 613 N.E.2d 881, 890 (Mass. 1993).  This figure is "the basic measure of a reasonable attorney's fee" under this approach.  Id.

-34-

at 891. After the base lodestar figure is calculated, "[i]n limited circumstances" it may be "enhanced to compensate for the risk of nonpayment." Id.; see also WHTR, 825 N.E.2d at 111. The Supreme Judicial Court has held that no enhancement was appropriate where the case was "not complex," "raised no novel issues of law," and did not have "significance . . . for a wider class of persons" beyond the particular plaintiff. Fontaine, 613 N.E.2d at 892.

The second permissible approach is a multi-factor analysis. Under this approach, a court may consider a number of factors, originally outlined in Cummings v. National Shawmut Bank of Boston, 188 N.E. 489 (Mass. 1934), to arrive at a determination of reasonable attorneys' fees,

> including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by [the] controversy, and the results secured.

Id. at 492 (quoted in WHTR, 825 N.E.2d at 111-12); see also Margolies v. Hopkins, 514 N.E.2d 1079, 1082 (Mass. 1987) (considering these factors where parties agreed to pay counsel fees as part of a settlement); Citizens Bank of Mass. v. Travers, 866 N.E.2d 974, 977 (Mass. App. Ct. 2007) (holding that these factors govern reasonableness of attorneys' fees awarded under a contract).

-35-

The district court on remand should determine which method Massachusetts would apply here. It is clear that the present award cannot stand.

If under Massachusetts law the lodestar approach is called for, or if it is highly relevant under the multi-factor approach, the litigation on remand may be simplified. In this case, the district court calculated a base lodestar figure of $7,734,000 (encompassing only class counsel), and neither side mounted a real challenge to the figure, as a pre-award figure, on appeal. Class counsel agreed at oral argument that the base lodestar value would only need to be increased to the extent that it did not include additional work, undertaken after the district court's award of fees, and even then "would not be an appreciably different number." That claim of increase due to additional work is preserved for remand. The defendants likewise agreed at oral argument that remand for consideration of only the increase for additional work and any lodestar multiplier would be acceptable.

Given the absence of any direct challenge to this figure, the base lodestar figure of $7,734,000 shall be the base figure used on remand as to class counsel, save for an increase for extra work. The use of this figure is appropriate given the courts' "interest in avoiding burdensome satellite litigation" over attorneys' fees. City of Burlington v. Dague, 505 U.S. 557, 566 (1992). Because no lodestar calculation was performed as to

plaintiffs' attorneys who were not class counsel, the district court will need to perform a separate lodestar calculation as to those attorneys.

Under both methods used by Massachusetts law, a question remaining on remand is the question of the appropriate contingency enhancement, if any. The district court's choice of a multiplier figure was not based on Massachusetts law nor justified by the record, and it is therefore vacated. We understand the parties to have agreed, at oral argument, that if there were a remand, the issues open on remand would include, inter alia, the further time remaining to be spent by all counsel, not just class counsel; the risks undertaken; and the value of the settlement. As to this last question, the actual claims data collected by the settlement administrator is relevant to the enhancement question and in determining the appropriate fee. We also urge the parties to attempt to resolve the remaining issues between them.

III.

We reverse the district court's decision for legal error and vacate the award of attorneys' fees. We remand for calculation of an appropriate fee under Massachusetts law, consistent with this opinion.[25]

No costs are awarded.

---

[25] We also remand the motion of class counsel requesting that they be paid the award of costs without further delay.