**Gladys GARCIA–RUBIERA, et al., Plaintiffs,**

v.

**Hon. Luis G. FORTUÑO, et al., Defendants.**

**Civil No. 02–1179 (GAG).**

United States District Court, D. Puerto Rico.

July 5, 2012.

Antonio J. Amadeo–Murga, A.J. Amadeo Murga Law Office, San Juan, PR, for Plaintiffs.

Angel E. Rotger–Sabat, Miguel A. Rangel–Rosas, Maymi, Rivera & Rotger-Sabat, Vanessa D. Bonano–Rodriguez, Yadhi-

---

**3.** Document no. 17.

**4.** Document no. 19.

ra Ramirez–Toro, Department of Justice, San Juan, PR, for Defendants.

## ORDER RE: INJUNCTIVE RELIEF

GUSTAVO A. GELPÍ, District Judge.

On January 9, 2012, this court declared that the Commonwealth of Puerto Rico's motor vehicle insurance premium reimbursement scheme, as embodied in Law 230 of September 11, 2002 and its companion amendments and regulations ("Law 230"), violates the notice requirements of the Due Process Clause. The plaintiff class—all motor vehicle owners in the Commonwealth of Puerto Rico who during the years 1997 to 2007 have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed for the compulsory insurance premiums—is also entitled to an injunction providing adequate public and individualized notice of reimbursement procedures to insureds owed reimbursement. The Governor of Puerto Rico, the Honorable Luis G. Fortuño, and the Secretary of the Treasury of the Commonwealth of Puerto Rico, the Honorable Jesús F. Méndez Rodríguez (collectively, "defendants"), are therefore **ORDERED AND ENJOINED** as follows, effective immediately:

At least 150 days before any premiums held by JUA are transferred to the Secretary of the Treasury, defendants shall compile the names and addresses of all motor vehicle owners who have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed for the compulsory insurance premiums, and whose premiums are pending transfer to the Secretary of the Treasury. If the names or addresses of such owners are unknown, defendants shall obtain that information from the Joint Underwriters Association ("JUA") and from traditional insurers in the Commonwealth of Puerto Rico. As to such owners whose premiums were transferred before the date of this order, or will be transferred less than 150 days after the date of this order, defendants shall compile this information about them no later than October 1, 2012.

At least 120 days before any premiums held by JUA are transferred to the Secretary of the Treasury, defendants shall: (1) publish a notice in at least one English-language newspaper of general circulation and one Spanish-language newspaper of general circulation; (2) publish a notice online until the later of (a) January 29, 2013 or (b) the date on which the Secretary of the Treasury has held such premiums for five years; and (3) mail individualized notices to those owners whose addresses are known. As to such owners whose premiums were transferred before the date of this order, or will be transferred less than 120 days after the date of this order, defendants shall provide notice to them no later than November 1, 2012.

In publishing or mailing notice, defendants shall state (1) the owner's entitlement to a refund, (2) the date of the transfer of the premium to the Secretary of the Treasury, (3) the text of Treasury Procedure 96, and (4) the portions of Law 230, as amended, under which the premiums escheat to the Commonwealth. As to those owners whose premiums were transferred to the Secretary of the Treasury on or before November 29, 2007, defendants shall further notify them that notwithstanding Law 230, a grace period to claim reimbursement will be extended until January 29, 2013.

No later than October 1, 2012, defendants shall publish the text of Treasury Procedure 96 online, in full, and make free

copies available at any Commonwealth office that collects JUA premiums.

Until January 30, 2013, defendants shall not deny a reimbursement on grounds that the Secretary of the Treasury has held the premium for five or more years.

The court shall retain jurisdiction of this matter until further order of the court, with power to enforce provisions of this Permanent Injunction by all means, writs, and remedies available to it, including, but not limited to, the exercise of its power of contempt for violation of the terms thereof.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

BRUCE J. McGIVERIN, United States Magistrate Judge.

A class of motor vehicle owners [1] ("plaintiffs") sued the Governor and Secretary of the Treasury of Puerto Rico, currently the Honorable Luis G. Fortuño and Juan Carlos Puig–Morales, respectively, (collectively, "defendants") over the mechanism for reimbursing duplicate insurance premiums paid to the Joint Underwriters Association ("JUA") and subsequently transferred to the Puerto Rico treasury. This court's judgment dismissing all claims was partially reversed by the Court of Appeals, and the case was remanded for the entry of declaratory and injunctive relief in favor of plaintiffs on their procedural due process claims. *Garcia–Rubiera v. Fortuño (Garcia Appeal II )*, 665 F.3d 261, 269–70 (1st Cir.2011). The declaratory judgment entered on January 9, 2012. (Docket No. 260).

The matter of injunctive relief was referred to me for a conference with the parties, and in the absence of any agreement, for a report and recommendation. (Docket No. 261). Following a status conference on January 15, 2012 at which no agreement was reached, I ordered them to simultaneously brief and propose injunctions. (Docket No. 267). Plaintiffs (Docket No. 272) and defendants (Docket No. 275) complied, but I ordered additional briefing on what relief, if any, should be provided to insureds whose duplicate premiums have been held by the Secretary of the Treasury for longer than five years. (Docket No. 280). Both sides complied (Docket Nos. 281, 282) and plaintiffs replied (Docket Nos. 283). Defendants were granted leave to reply (Docket No. 287) but only moved to strike plaintiffs' reply (Docket No. 288). I denied the motion to strike. (Docket No. 289). For the reasons that follow, I recommend that the court enjoin defendants as set forth at the end of this opinion.

## BACKGROUND

As the travel of this litigation has already been recounted many times before, I only summarize those facts relevant to injunctive relief on plaintiffs' procedural due process claims. For a fuller history of the legislation at issue and its purposes, *see Garcia Appeal II,* 665 F.3d at 264–70; *see also Garcia–Rubiera v. Flores–Galarza (Garcia Dismissal )*, 516 F.Supp.2d 180 (D.P.R.2007), *Garcia–Rubiera v. Calderón (Garcia Appeal I )*, 570 F.3d 443 (1st Cir. 2009), and *Garcia–Rubiera v. Fortuño (Garcia Summary Judgment )*, 752 F.Supp.2d 180 (D.P.R.2010).

Motor vehicle owners in Puerto Rico must purchase liability insurance. The JUA offers an insurance plan providing

---

1. "All motor vehicle owners in the Commonwealth of Puerto Rico who during the years 1997 to 2007 have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed for the compulsory insurance premiums." (Docket No. 151).

the required minimum coverage. *Garcia Appeal II,* 665 F.3d at 264. A vehicle owner wishing to renew a Puerto Rico vehicle registration has the choice of either presenting proof of owning adequate private insurance (which is, under some circumstances, impossible to obtain), or paying a flat premium to the JUA. *Id.* at 264–65. Owners who hold private insurance but were nonetheless required to pay the JUA premium are entitled to reimbursement of this "duplicate" payment. *Id.* at 265.

Under Law 230 of September 11, 2002 and its amendments, the JUA must transfer unclaimed duplicate premiums that are more than two years old to the Secretary of the Treasury once every two years. *Id.* at 266. Owners may claim these premiums from the Secretary by following the steps outlined in Treasury Department Procedure No. 96 ("Procedure 96"). *Id.* at 266–67. However, neither JUA nor Treasury inform owners of the transfer, or of the right to seek reimbursement from Treasury directly. *Id.* at 266. Moreover, the only way to obtain a copy of the procedure is to request it from the Secretary of State in person. *Id.* at 267. After five years in the custody of the Secretary, any unclaimed premiums escheat and become property of the Commonwealth. *Id.* at 266.

This arrangement violates the Due Process Clause because it does not provide insureds with adequate notice of what has happened to the money they are entitled to reclaim.

This notice must include notice of the transfer of funds from JUA to the Commonwealth, of Procedure 96, and of Law 230's escheat provisions, and must be provided either individually or via publication, to those insureds whose duplicate premiums are currently or will be in the possession of the Commonwealth. In addition, the Commonwealth must publish Procedure 96, in full, online and in other places readily accessible by the public.

*Id.* at 276–77.

## DISCUSSION

This court has been directed to enter injunctive relief in favor of the plaintiffs. "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1). These requirements "have been treated as mandatory, and even emergency conditions have not warranted a departure from them." *Francisco Sánchez v. Esso Std. Oil Co. (P.R.),* 572 F.3d 1, 15 (1st Cir.2009) (quoting 11A Charles Alan Wright *et al., Federal Practice and Procedure* § 2955 (2009)). But "as the detail, precision, and specificity of an order increases, the possibility of technical infractions by those enjoined and the opportunity for harassment by those benefitting from the order become greater." 11A *Federal Practice and Procedure* § 2955.

Both parties have submitted proposed orders, neither of which strikes the correct balance between precision and hyper-technicality. Moreover, both proposals stray from the relief that the Court of Appeals held to be required. Therefore, rather than recommending the wholesale adoption of either party's language, I will analyze their positions with respect to eight major areas of difference: (1) the timing of notice, (2) the treatment of premiums that have already been transferred to the Commonwealth, (3) the content of notices, (4) the method by which individual notices are mailed, (5) the methods of public notice, (6) the publication of Procedure 96, (7) various

compliance measures proposed by the plaintiffs, and (8) the personal service of the injunction on the defendants. At the conclusion of this report and recommendation, I have drafted language reflecting my reasoning on these points.

### I. Timing of Notice

Plaintiffs and defendants are in agreement that individualized mailings can start as early as August 1, 2012. (Docket No. 272–1, p. 2; Docket No. 282–1, p. 3). Plaintiffs propose that going forward, notice should be provided at least 120 days before funds are transferred from JUA to the Treasury. (Docket No. 272–1, p. 2–3). Defendants propose that notice be sent nearly five years after the JUA to Treasury transfer, "no later than one (1) month prior to the effective date of escheat to the Government." (Docket No. 282–1, p. 3).

The due process interest at stake here is the insured's right to be timely notified of both (1) who holds the duplicate premium, and (2) how to get it back. The requirements of Procedure 96 are not so onerous as to be unconstitutional themselves. *Garcia Appeal II*, 665 F.3d at 278; *Garcia Summary Judgment*, 752 F.Supp.2d at 187. Nonetheless, it is undeniable that as time passes, an insured will face more difficulty in assembling all of the documents required under the procedure. People and businesses buy and sell their cars, switch insurers, and otherwise go through changes that may make it difficult to obtain duplicates of documents such as the motor vehicle license, certification of premium payments, or the insurance policy itself.

Therefore, I recommend following plaintiffs' proposed timetable. Notice for insureds whose premiums have already been transferred to the Commonwealth should occur no later than August 1, 2012. Going forward, notice should occur at least 120 days before premiums are transferred to the Commonwealth. Relatedly, although both sides recognize that the Commonwealth should obtain updated names and addresses for insureds entitled to reimbursement, neither proposal sets a timeframe for compiling that information. I therefore recommend that the defendants be specifically directed to compile the necessary information 30 days before notice is required—that is, 150 days before premiums are transferred from the JUA.

### II. Premiums Already Transferred to the Commonwealth

Plaintiffs argue that the final injunction should permit them to reclaim premiums which, under Law 230, have already escheated to the Commonwealth. (*See* Docket No. 281, p. 2–3). Defendants flatly reject the proposition, arguing that the First Circuit's silence regarding this scenario in *Garcia Appeal II* is equivalent to a holding that "those funds are to remain untouched." (Docket No. 282, ¶ 19). I find that defendants' view leads to an incorrect result, but that plaintiffs overstate the remedy they are entitled to.

In their second proposed injunction, defendants suggest telling insureds that "duplicate payments already escheated to the Government will not be reimbursed, and that notice of the provisions of Law 230 and Procedure 96 will not constitute a waiver by the Government, or a right to reimbursement, of the already escheated payments." (Docket No. 282–1, p. 2) (emphasis omitted). But the law does not support that conclusion, and no such language should be included in the notice. The Commonwealth is under an "overriding obligation ... throughout the total process, to provide notice and *a meaningful procedure* to return to plaintiffs the property that is rightfully theirs." *Garcia Appeal II*, 665 F.3d at 271 (emphasis add-

ed). This procedure must be offered "after the funds have been transferred and before their final escheat." *Id.* Therefore, as plaintiffs correctly argue, the final deprivation of property by escheat must be held void unless it satisfies due process. *See United States v. Giraldo,* 45 F.3d 509, 512 (1st Cir.1995) ("If the notice turns out to have been inadequate, the forfeiture is void.") (remanding for fact-finding).

Defendants argue that statutes should be presumed constitutional as written, and that the escheat of funds under Law 230 should therefore be given effect. (Docket No. 282, ¶¶ 6–16). These arguments are based on the assumption "that plaintiffs have failed their burden of challenging the constitutionality of Laws 230 and 414." (Docket No. 282, ¶ 10). But following remand, this court declared that "the Commonwealth's reimbursement scheme, as embodied in Law 230 and its companion amendments and regulations, *violates the notice requirements of the Due Process Clause.*" (Docket No. 260, ¶ 3) (emphasis added) (quoting *Garcia Appeal II,* 665 F.3d at 277). The laws defendants acted under are unconstitutional as written, and defendants must conform their conduct to the requirements of the Constitution. Defendants ask: "By instructing the defendants to provide adequate notice of the law, its transfer provisions, its escheat provisions, as well as [P]rocedure 96 for reimbursement, the net effect is to maintain [L]aw 230 valid. Otherwise, what reason would there be to instruct the [C]ommonwealth to cure the notice defects?" (Docket No. 6, ¶ 17). But the defendants answer their own question: the deprivation of property under Law 230 is valid *if and only if* constitutionally adequate notice has been given.

Finally, defendants complain that "[t]he utter lack of diligence, on the part of the plaintiffs[,] particularly those whose pay-

ments have already escheated, should not be [re]warded by allowing them to seek reimbursement at this juncture, when notice of where their duplicate payments were, and how to retrieve them[,] was certainly not an issue for them." (Docket No. 282, ¶ 21). That position is not consistent with the requirements of due process. The Court of Appeals previously stated that "[p]laintiffs' actual notice has no bearing in this case because Plaintiffs assert a facial challenge to Law 230." *Garcia Appeal I,* 570 F.3d at 456. In the last round of appeals, it added that "the state must provide constitutionally adequate notice *even to citizens who fail to take the initiative to inquire about their property.*" *Garcia Appeal II,* 665 F.3d at 276 (emphasis added). Or as the Supreme Court puts it, "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (quoted in *Garcia Appeal II,* 665 F.3d at 276).

Yet plaintiffs' proposal also goes too far. They would reset the five-year clock under Law 230, and only start it running again once individual notice has been provided. (*See* Docket No. 272–1, p. 2). While the Puerto Rico legislature determined that five years of abandonment is appropriate in the first instance, that precise length of time is not constitutionally significant; only the duty to provide meaningful notice is. Moreover, the Commonwealth has a valid interest in making a final disposition of these funds, and in being able to determine exactly how much money it actually owns. To expedite the final resolution of this matter, I recommend a grace period of 120 days following the issuance of notice, during which time defendants may not deny reimbursement to an insured on grounds of escheat. The 120–day period is the same length of time plaintiffs suggest

for giving notice of a premium transfer from the JUA to the Commonwealth, and should therefore be a reasonable amount of time for insureds to prepare and submit requests for reimbursement.

### III. Content of Notices

Plaintiffs propose that the notices include a statement of the sum, including interest, to which an insured is entitled, as well as the relevant VIN, license plate number, and policy description. (Docket No. 272–1, p. 2). Defendants' proposal tracks the notice described in *Garcia Appeal II*: notice of the factual entitlement to refund, the applicable laws, and the administrative procedure. (*See* Docket No. 282–1, p. 2).

Providing more information to insureds may make it easier for them to gather the necessary documentation and ultimately get their refunds. But while the Court of Appeals noted there was "some evidence" that the Commonwealth kept enough names and addresses to feasibly send individual notice, *Garcia Appeal II*, 665 F.3d at 276, plaintiffs have not demonstrated that the Commonwealth can readily correlate the additional information they would have defendants provide. In any case, "there is daylight between desirable policy and the bare minimum required by the Constitution." *See Whiting v. United States*, 231 F.3d 70, 76 (1st Cir.2000) (addressing proof of notice to prisoners). While defendants could show good faith by collecting and sending this additional information, due process does not require it. Therefore, I recommend adopting defendants' position on this point.

### IV. Method of Individual Mailings

Plaintiffs propose that notice be sent by certified mail. (Docket No. 272–1, p. 2). Defendants would instead use regular mail. (Docket No. 282–1, p. 2). The Court of Appeals stated that notice should be individually mailed, but did not indicate whether that mail need be sent certified to satisfy due process. *See Garcia Appeal II*, 665 F.3d at 276–77.

I find that the Commonwealth should be left to choose whether it will send certified mail or regular mail. Notice is constitutionally adequate when the mode of notice is "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Dicta in *Jones v. Flowers* suggests that the choice of certified versus regular mail has pragmatic, but not constitutional dimensions:

> The Solicitor General argues that requiring further effort when the government learns that notice was not delivered will cause the government to favor modes of providing notice that do not generate additional information—for example, starting (and stopping) with regular mail instead of certified mail. We find this unlikely, as we have no doubt that the government repeatedly finds itself being asked to prove that notice was sent and received. Using certified mail provides the State with documentation of personal delivery and protection against false claims that notice was never received. That added security, however, comes at a price—the State also learns when notice has *not* been received. We conclude that, under the circumstances presented, the State cannot simply ignore that information in proceeding to take and sell the owner's property—any more than it could ignore the information that the owner in *Robinson* [*v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) ] was in jail, or that the owner in *Covey* [*v. Town of*

*Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) ] was incompetent. *Jones v. Flowers,* 547 U.S. 220, 237, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). Therefore, I recommend only ordering defendants to mail notice, without specifying whether it need be sent certified. Defendants' present proposal suggests they will elect to use only regular mail, but there is no constitutional reason for that choice to be made firm in this court's injunction.

## V.   Details of Newspaper Publication

Plaintiffs propose that newspaper publication occur "once weekly during two consecutive weeks in two daily newspapers of general circulation" (Docket No. 272–1, p. 2), while defendants would publish only once, with one newspaper being in English and the other in Spanish (Docket No. 282–1, p. 3). Both proposals overlook the Court of Appeals's statement that alternative notice by publication must be made "online and in other places readily accessible by the public." *See Garcia Appeal II,* 665 F.3d at 276. But together with a provision for online publication, I find defendants' proposal of single publication adequate. *Cf.* Supp. R. Adm. Marit. Cls. & Asset Forf. Actions R. G(4)(a)(iii) (permitting single publication for federal asset forfeiture if accompanied by at least 30 days' online notice). Therefore, I recommend adopting defendants' proposal for newspaper publication, but adding a requirement that insureds' names be published online, beginning 120 days before any premiums are transferred to the Commonwealth, and ending on the date when the insured becomes barred from claiming reimbursement.

## VI.   Publication of Procedure 96

The defendants' proposal would order them to "provide both internet and physical access to both the reimbursement Procedure ... and the list of the documenta-tion required ... all at no cost to the vehicle owners." (Docket No. 282–1, p. 3). Because the Court of Appeals found that Procedure 96 should be posted "in full, online and in other places readily accessible by the public," I recommend including defendants' proposal in the injunction. However, the defendants' language does not specify *where* the procedure will be made available, and is thus too vague to enforce. I therefore further recommend specifying that free copies of the procedure must be made available at any Commonwealth office that collects JUA insurance premiums. This would not impose a substantial personnel burden on the defendants, as any such office would already be staffed to accept payments. Moreover, from the insured's perspective, it would be logical to find out how to obtain a refund from the same office that collected the premium in the first place. *See also Garcia Appeal II,* 665 F.3d at 273 (insureds have no way to know they should seek Procedure 96 from the Secretary of State as opposed to Treasury).

## VII.   Miscellaneous Compliance Measures

Both parties propose that the court retain jurisdiction to enforce the injunction, and I recommend the inclusion of language to that effect. However, plaintiffs offer additional clauses that are best described as measures to ensure compliance. They propose the appointment of a monitor with "the power and authority" to verify defendants' compliance with the injunction. (Docket No. 272–1, p. 3–4). They also seek to restrict the use of money already transferred under Law 230 pending the issuance of notice:

As to all duplicate premiums obtained from or transferred by the [JUA] to the Secretary of the Treasury since the enactment of Law 230 ... to the present,

hereinafter and corresponding to the years 1998 on, from appropriating, taking title or disposing of any or all said duplicate premiums without first giving adequate and timely individualized mail and publication notice to each member of the class entitled to the refunds....

(Docket No. 272–1, p. 1–2). Finally, they would condition the transfer of funds from the JUA to the Commonwealth:

As to any and all present or future duplicate premiums within the custody or possession of JUA, Defendants as previously described are further enjoined from transferring to the Treasury Department of the Commonwealth of Puerto Rico any such present or future duplicate premiums in possessions of JUA without first providing timely individualized notice ... giving the class adequate time to claim them from JUA before said transfer.

(Docket No. 272–1, p. 2–3).

All of this proposed language adds unnecessary layers of complexity to the Court of Appeals' mandate to provide adequate notice. I am confident that defendants will find motivation enough in their respect for this court's authority, as well as its power to hold them in contempt should they fail to comply. And by omitting this language, it will be more straightforward to resolve any questions of defendants' compliance. I therefore do not recommend that these provisions be included in the injunction.

## VIII. Personal Service

Plaintiffs' proposal directs the United States Marshal to personally serve defendants with a copy of the final injunction. (Docket No. 272–1, p. 4). This appears to address the actual notice requirement of Rule 65:

The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed.R.Civ.P. 65(d)(2). I recommend granting plaintiffs' request, and directing personal service following the issuance of the injunction.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an injunction issue as follows:

"On January 9, 2012, this court declared that the Commonwealth of Puerto Rico's motor vehicle insurance premium reimbursement scheme, as embodied in Law 230 of September 11, 2002 and its companion amendments and regulations ("Law 230"), violates the notice requirements of the Due Process Clause. The plaintiff class—all motor vehicle owners in the Commonwealth of Puerto Rico who during the years 1997 to 2007 have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed for the compulsory insurance premiums—is also entitled to an injunction providing adequate public and individualized notice of reimbursement procedures to insureds owed reimbursement. The Governor of Puerto Rico, the Honorable Luis G. Fortuño, and the Secretary of the Treasury of the Commonwealth of Puerto Rico, the Honorable Juan Carlos Puig Morales (collectively, "defendants"), are therefore ORDERED AND ENJOINED as follows, effective immediately:

At least 150 days before any premiums held by JUA are transferred to the

Secretary of the Treasury, defendants shall compile the names and addresses of all motor vehicle owners who have paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed for the compulsory insurance premiums, and whose premiums are pending transfer to the Secretary of the Treasury. If the names or addresses of such owners are unknown, defendants shall obtain that information from the Joint Underwriters Association ("JUA") and from traditional insurers in the Commonwealth of Puerto Rico. As to such owners whose premiums were transferred before the date of this order, or will be transferred less than 150 days after the date of this order, defendants shall compile this information about them no later than July 1, 2012.[2]

At least 120 days before any premiums held by JUA are transferred to the Secretary of the Treasury, defendants shall: (1) publish a notice in at least one English-language newspaper of general circulation and one Spanish-language newspaper of general circulation; (2) publish a notice online until the later of (a) November 29, 2012 or (b) the date on which the Secretary of the Treasury has held such premiums for five years; and (3) mail individualized notices to those owners whose addresses are known. As to such owners whose premiums were transferred before the date of this order, or will be transferred less than 120 days after the date of this order, defendants shall provide notice to them no later than August 1, 2012.

In publishing or mailing notice, defendants shall state (1) the owner's entitlement to a refund, (2) the date of the transfer of the premium to the Secretary of the Treasury, (3) the text of Treasury Procedure 96, and (4) the portions of Law 230, as amended, under which the premiums escheat to the Commonwealth. As to those owners whose premiums were transferred to the Secretary of the Treasury on or before November 29, 2007, defendants shall further notify them that notwithstanding Law 230, a grace period to claim reimbursement will be extended until November 29, 2012.

No later than August 1, 2012, defendants shall publish the text of Treasury Procedure 96 online, in full, and make free copies available at any Commonwealth office that collects JUA premiums.

Until November 30, 2012, defendants shall not deny a reimbursement on grounds that the Secretary of the Treasury has held the premium for five or more years.

The court shall retain jurisdiction of this matter until further order of the court, with power to enforce provisions of this Permanent Injunction by all means, writs, and remedies available to it, including, but not limited to, the exercise of its power of contempt for violation of the terms thereof."

I further recommend that plaintiffs' request for personal service of the final injunction be **GRANTED** when the injunction issues.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days.

---

**2.** The parties should take note that all dates in this recommendation are subject to the discretion of the presiding district judge, particularly in light of any length of time that this matter is pending decision.

Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

ORDER

ORDER adopting Report and Recommendation.

Judge McGiverin's report and recommendation is hereby ADOPTED in its entirety, with minor modifications as to the dates the injunction sets.